May I please the Court, Mr. Diskin? My name is Brian Suchita, and I represent the petitioner Steve Slaughter. Your Honor, in this case, this is an appeal from a criminal case. It's an appeal regarding a sentence received. It really raises issues of double counting, and specifically, what we argue, whether or not the counts are properly grouped or not grouped, as it was in this case. This is a case in which Mr. Steve Slaughter was a police officer, a Seattle police officer. He was charged with the Hobbs Act, 18 U.S.C., 1951. He violated the Hobbs Act by using his position as a police officer to shake down a drug dealer. He obtained heroin from this drug dealer while in uniform under official color of right. A few minutes after the shakedown, he gave the drugs away as a result for this conduct, all of which occurred within a few minutes. He was also charged with possession of that heroin, which he had just taken from the drug dealer, and with actual distribution for giving it away. The issue that you're raising has to do with the sentence. That's correct, Your Honor. It seems to me that your argument rises or falls with whether or not the district court was correct or at least permitted to find that your That would be the government's argument, and I think that can be answered in two parts. Our first argument really is, is that the drug counts and the Hobbs Act count should group, and they should group under The argument you didn't raise below. That's correct, and we've noted that in our brief. And that argument also works, it seems to me, only if the enhancement is for abuse of trust, right? I think that's incorrect, Your Honor. And the reason why I say that, and I know intuitively it would seem that abuse of trust and Hobbs Act are the only things which are embodied, that conduct embodies. But the reason why I think that's incorrect, even though that is the natural intuitive response or analysis, is we are dealing with the United States sentencing guidelines. And what's controlling here is 2C1.1. I think everyone agreed that that was the guideline that would govern the Hobbs Act sentence or the base offense, total offense levels for the Hobbs Act. Now, what's really important to note under 2C1.1 are the application notes. And what the application note says, do not apply Section 3B1.3, parent abuse of trust or use of special skill, except when the offense level is determined under 2C1.1, i.e., except when the Hobbs Act is used to facilitate the commission of another offense. So looking at the application note, which I think the Court was required to follow, if this was simply a Hobbs Act violation, it would have had a base offense level of 10. That application note says under no circumstance is the district court supposed to use either special skill or abuse of trust as adjustments. If you're sentencing under that base offense level 10, that would be Section A. The only time that a court can apply those adjustments is if the court uses the cross-reference under 2C1.1, C1, 2, or 3, and only under those circumstances. And clearly, what you can see, what is contemplated is that those adjustments are not being applied to the Hobbs Act because it's part of the Hobbs Act. They're being applied because of the commission of another offense or the use of the Hobbs Act to facilitate the commission of another offense. You can go back, though, and answer more specifically whether or not the defendant made use of special skills. And if your answer is no, why is that the case? I know the government did argue that there was use of special skills. The court held that there was or found that there was. That is correct. And I think what the court, this Court, needs to do is not to simply say, well, what did the district court say, but was there anything that the court pointed out to, observed, stated? Was there any fact that the district court would hang its robe on to support that finding? Now, I was looking through the transcript and all of the testimony before the court, and this is what really I think it amounts to. We do know that, and we did present the sworn testimony of Maria Foster, FBI agent, testified during the preliminary hearing. She was observing what happened. She testified that this was not a safe stop, and it was not a standard stop. Well, let me, let me, there's a theoretical problem that I have with your argument, and that is, let's assume that we all agree that something involves special skills. Let's say it's a surgeon who's committing a crime that has to do with doing surgery. Right. And we'd all agree that, in general, that involves special skills. If the surgeon is really lousy and does just a terrible job, but is attempting to do surgery, why isn't that still the use of the special skills to commit the crime, even if they're used in an incompetent manner? Because it seems to me that your argument is being a police officer making a stop could involve the use of special skills, but if you do a bad job, it doesn't. Well, I think, I think the real question is, does the bad job amount to such a bad job or a non-job that it amounts to the lack of use of special skill? Certainly, I think this is a case in which a district court judge, I mean, the court said, this officer received training, and I believe that he possessed the skill. The real question was, was there anything in the record to show that he actually used the skill? Not that, not only did, whether it's a bad job or not, but what is there in the record? And I think it's instructive. I know that in many ways the Court may want to defer to the district court. The district court heard the evidence. The district court saw the tape. And I think one of the really telling things about the tape, for instance, which the district court did refer to, which is not before this Court, is what the district court said in terms of the tape. And the excerpt is a record at page 54. The court said, the court has watched the video. It cannot be said strongly enough that clearly watching the video and reading the facts, which are really not in dispute here, the defendant on multiple occasions used his uniform and his position of trust to commit the crimes, if this is certainly a case where abuse of trust is an applicable adjustment upward. Now, the only time the district court says anything about special skills is in the context of receiving or possessing training. The very next paragraph after the district court makes this statement, he simply says, I find the defendant has substantial training to become a Seattle police officer and prepared him to make what we call Terry stops, stopping someone on the street, patting them down, procedures for officer safety, and the like. And then he ends up using his power and his special skills as a police officer, which I find he used in this case. So he lists them off and says, I find that he used those. But the problem is that there's nothing to support that. And we know from the actual eyewitnesses, the police officers who actually saw what was happening, Sergeant Allen testified during the grand jury, in front of the grand jury, FBI agent Maria Foster, the case agent. They did not describe any use of special skill. In fact, Sergeant Allen said, this stop started with a lie. Counsel, you have about two minutes left. Thank you very much. Your Honor, I don't believe the record supports the finding of special skill. I think even if the court, this court finds that special skill was used to significantly facilitate the commission of this offense, that still the drug counts and the Hobzack counts should have grouped because they, both of those adjustments were embodied in the Hobzack. Thank you. May it please the Court, my name is Francis Diskin. I'm an assistant United States attorney, and I was responsible for the matter in the district court. I'd like you to address the grouping question. I think we're all aware that we look at it under a plain error standard with all the limitations that that entails. But on the merits, if the enhancement is for abuse of trust, leaving aside special skills, it would seem clear that grouping should have occurred. Do you agree with that as a general proposition? I think it's difficult to find a Hobzack violation where one commits extortion or bribery under color of official right because they're holding a public position where it would not involve an abuse of trust. Okay. Now, to me, the question, as an interpretive question, becomes more difficult if the special skills prong is attached to it because not every Hobzack violation necessarily involves the use of special skills. And if I may, Your Honor, if the Sentencing Commission had separated those two distinct adjustments and given them different numbers, we wouldn't be arguing about this. But they lumped them together under a single guideline. And courts, including this court on other occasions, seems to be affirming the use of that adjustment even to the Hobzack violation. And parenthetically, what Judge Zille did, I believe, was apply that adjustment to the drug violation. At least that's what the government was arguing. It was our position at sentencing that the ‑‑ and we focused only on special skills. The government did its best, frankly, to stay away from the abuse of trust area because of the difficulty, I believe, in separate ‑‑ You didn't want to hear my question. I didn't want to hear the Court of Appeals question later. You're right, Your Honor. We focused on special skills because that prong independently supports the adjustment I submit. But what Judge Zille did was apply that adjustment to the drug crimes, which each of which had grouped the possession with intent to distribute and the distribution. And because of the drug quantity, invited the court to place that at level 14. Judge Zille, as you can see from the sentencing transcript, started the morning by inviting counsel back into chambers, and he mentions this later on in the transcript, to basically say, you folks both have it wrong, and I think probation has it wrong, because no one has paid any attention to the requirement in the Hobzack guideline, 2C1.1, that this is not a level 10. I have to cross‑reference the crime that was facilitated, which was the drug trafficking, look to the guideline range for conspiracy involved in that drug trafficking. That, too, leaves me at level 14. He then applied the adjustment for the abuse of trust special skills to the drug crime. This Court has previously affirmed the adjustment being made to the Hobzack defense itself, and that, frankly, seems more problematic than applying it to the other charged crimes. But in the case that I referred to in the 28J letter, and, frankly, which is not new because Mr. Tsuchida mentioned the Gonzales case at sentencing on page 13 of the transcript, it was one of the cases that Judge Zille invited counsel's attention to back in chambers. And as you can see, or as you may be familiar with the case of United States v. Gonzales, there the adjustment for the abuse of trust was applied to a bribery conviction of an immigration inspector who permitted what he believed to be drug couriers to enter the United States at the California‑Mexico border. And the Ninth Circuit in Gonzales pointed out the permissibility of that adjustment because 2C1.1 directed the Court to apply the guideline range applicable to the facilitated crime. So because there was a cross reference to another offense guideline, it was then permissible under application note three to apply the abuse of trust adjustment. That's what happened here. What is your response to counsel's argument that a person can possess special skills, but bungle an activity so badly that the special skills are not actually being used? Well, I think my answer is, as Judge Zille concluded, he used them. That's not the question I asked you, though. Is it possible to possess special skills, but be so far off the mark that they're not being used to facilitate the commission of the crime? It certainly is possible, Your Honor, to possess special skills and not make use of them. The surgeon who robs the bank is unlikely to have used any of his special skills from his training and education and experience in the bank robbery. But the guideline requires that they be used. They be used to facilitate the crime. If you use them, whether you use them effectively or not, I submit is immaterial. If you have made use of them, and in this case, as Judge Zille observed, he used his training to conduct a Terry stop and a pat down to basically smooth talk his way through his encounter with the individual, unbeknownst to him, who was an undercover FBI agent, to stay calm, be cooperative. If you're cooperative and are willing to lose your drugs, I'm not going to effect an arrest. That was this police officer's method of committing armed robbery from drug traffickers so he could provide heroin to Ms. Soriano, who he had befriended. I guess I'm having difficulty sorting out how much of that is simply abuse of the position of trust itself, that is, the ability to stop someone because you're wearing the uniform and all of the things that go with being a police officer, and how much of that is the use of a special skill. And it would be similar, for example, to a lawyer stealing from a client. It doesn't take any special skill to steal, but you've used the position of trust potentially to do that. There's a case I could invite the Court's attention to, which, again, I believe was cited to Judge Zille. I do not believe it's an either or. It's an appellate brief, however. It's a Ninth Circuit case called United States v. Pascucci. And … I don't suppose you could spell that for me. P-A-S-C-U-C-C-I. And I believe I can do better than spell it. I believe I can give Your Honor the citation that was provided to Judge Zille. It's 943 Fed Second 1032, a 1991 case from this Court, where Judge Zille, who was an undercover FBI agent, was involved in an affair in … facts are a bit lurid, but the bottom line is that a senior deputy United States marshal in cahoots with another deputy marshal filmed the sexual encounter between the deputy marshal and a traveling salesman, and then tried to extort money from him. And the special skills that the Court focused on as an appropriate adjustment was the marshal partner's use of the computer to track down the changed address by the victim, the new telephone number that he tried to … that he applied for and succeeded in getting in order to avoid contact with the victim. And that was viewed as a special skill, although the Court also talked about the fact that this was an abuse of trust. But the district court had concluded that this was a special skill, that sentencing adjustment was affirmed on appeal by the Ninth Circuit. And, like I indicated, it was a case that had been cited to Judge Zille in the government sentencing memorandum. I see my time is up. If there are no further questions, I'll submit it. Thank you, counsel. Peter, you have a couple minutes left for … Thank you very much, Your Honor. Just a couple points. There was an argument about 3B1.3, abuse of trust and special skills as being two separate adjustments lumped together. Well, the sentencing guideline created that adjustment. They created 2C. They created all of the application notes. If they wanted special skill not to apply to 2C1.1, they could have easily said so. They could have said, that prong simply doesn't apply. That's a separate ballgame. And they chose not to. I don't think we have any other choice other than to apply the plain language of what the guideline says. This is also not a case in which there were not many adjustments made. This is a case in which the Hobbs Act starts out with a base offense level of 10. It went up to 14 to mirror the drug counts. And the judge also increased it two more levels for the 3B1.3, which he said was allowed under 2C1.1 and United States v. Gonzales. So we went from 10 to 16. What we're really contesting here is, given that fact, they should have grouped. The total offense level should have been 16 instead of 18, as Judge Zille found. Now, the government also argued the issues of, well, Mr. Slaughter conducted a Terry stop. He used his skills to stay calm or calm the drug dealer to be cooperative. Well, Judge Zille never said anything about that. He didn't, in fact, even say that there was a Terry stop. He says he was trained to do a Terry stop. He didn't say he used any such skills for calmness or interrogation or anything or safety. The evidence was completely contrary. And U.S. v. Costa Cuccia, I think I'm saying it, was a case that stands in sharp distinction. That was a case in which the government just mentioned the U.S. Marshal was using specialized tracking skills to hunt down a person they were trying to extort. This person kept on moving, but no matter where he went, they kept tracking him down. And that was an example of the use of specialized U.S. Marshal skills. Thank you. Thank you, counsel. The case just argued is submitted. The next case on the docket, United States v. Gamer, has been submitted on the briefs, and we will take a short recess before the remainder of the morning calendar. All rise. This court shall stand in recess.
judges: Brunetti, T.G. Nelson, Graber